******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JOSHUA CRUZ *v.* COMMISSIONER
OF CORRECTION
(AC 43961)

Bright, C. J., and Prescott and Lavine, Js.

*Syllabus*

The petitioner, who had been convicted on a plea of guilty to the crime of
murder, sought a writ of habeas corpus, claiming that his counsel pro-
vided ineffective assistance. At the time of his plea, the trial court found
that it was made voluntarily and informed the petitioner that, pursuant
to his agreement with the state, he would be sentenced to a period of
twenty-five to forty-two years of incarceration. Prior to his sentencing
hearing, the petitioner filed a letter with the trial court seeking to with-
draw his guilty plea, indicating that his attorney, G, had coerced him
into pleading guilty and that he thought he was doing so to a charge of
manslaughter rather than to murder. The trial court then appointed a
new attorney, P, to represent the petitioner and P filed a motion to
withdraw the petitioner's guilty plea. The petitioner withdrew that
motion at his sentencing hearing and the trial court sentenced him to
thirty-eight years of incarceration. The petitioner subsequently filed a
petition for a writ of habeas corpus, claiming that, during plea negotia-
tions, G misadvised him as to the negotiated plea agreement and his
sentence exposure, failed to make a thorough investigation of the facts,
failed to consult with him adequately before his guilty plea, and failed
to present favorable information to the trial court. Additionally, the
petitioner claimed that, during his sentencing hearing, P failed to present
mitigating evidence and failed to advocate zealously to secure the lowest
sentence contemplated by the plea agreement. Following an evidentiary
hearing, the habeas court rendered judgment denying the habeas peti-
tion, and the petitioner, on the granting of certification, appealed to this
court. *Held*:

1. The habeas court did not err in concluding that the petitioner had failed to
prove that he was prejudiced by G's allegedly inadequate representation
during plea negotiations because the petitioner did not demonstrate
that there was a reasonable probability that he would not have pleaded
guilty and, instead, would have gone to trial but for G's allegedly deficient
performance: the petitioner's ability to prove prejudice was undermined
by the fact that he was appointed alternate counsel, P, who, after
reviewing his entire file with him, advised the petitioner to accept the
plea bargain and forgo trial, and, as a result, the petitioner decided to
withdraw his motion to withdraw his plea and proceeded with his guilty
plea; moreover, the probability of the petitioner's conviction at trial was
high, as the state's case against him was unusually strong and included
video surveillance of the incident, the statements of multiple eyewit-
nesses, and evidence of the petitioner's DNA on the murder weapon;
furthermore, no evidence was presented that indicated that a lesser
sentence would have been available, but for G's allegedly deficient
performance.

2. The habeas court did not err in concluding that the petitioner failed to
prove his claim of ineffective assistance with respect to P's representa-
tion during the sentencing proceedings: the petitioner was not entitled
to a presumption of prejudice pursuant to *United States* v. *Cronic* (466
U.S. 648) and *Davis* v. *Commissioner of Correction* (319 Conn. 548)
because P advocated on his behalf at the sentencing hearing by present-
ing mitigation evidence, including the petitioner's remorse, his difficult
upbringing, his positive work history, and his lack of prior involvement
with the criminal justice system, and by requesting a sentence that was
less than the petitioner's maximum exposure, even though he did not
request the minimum sentence for strategic purposes; moreover, the
petitioner failed to prove that he was prejudiced by P's allegedly inade-
quate representation because he failed to present any evidence indicating
that the trial court would have given him a lesser sentence if mitigation
evidence relating to the petitioner's mental health or other additional
evidence was presented at the sentencing hearing and, given the strength

of the state's case, the seriousness of the crime, and the trial court's awareness of the pertinent mitigation evidence, there was not a reasonable probability that, but for any deficient performance by P, the petitioner would have received a lesser sentence.

Argued April 8—officially released July 20, 2021

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Deborah G. Stevenson*, assigned counsel, for the appellant (petitioner).

*Erika L. Brookman*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Craig Nowak*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Joshua Cruz, appeals, following the granting of his petition for certification to appeal, from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court erred by concluding that (1) Attorney William Gerace's allegedly deficient representation during plea negotiations was not prejudicial, and (2) Attorney Dean Popkin did not render ineffective assistance with respect to the petitioner's sentencing proceeding. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of the petitioner's claims. On December 18, 2012, the petitioner pleaded guilty before the court, *Clifford, J.*, to murder in violation of General Statutes § 53a-54a (a).[1] The charge stemmed from an incident that occurred in New Haven on August 14, 2010, during which the petitioner shot and killed the victim, Javier Cosme, in a parking lot following an altercation at a nightclub. The court canvassed the petitioner and found that his plea was made voluntarily and "understandably" with the assistance of competent counsel. In exchange for his plea of guilty, the court, pursuant to an agreement between the state and the petitioner, informed the petitioner that it would sentence him to between twenty-five and forty-two years of incarceration, with the opportunity to argue for less than the maximum of forty-two years.

Prior to the sentencing hearing, the petitioner filed a letter with the court seeking to withdraw his guilty plea. In his letter, the petitioner alleged that Attorney Gerace had coerced him to plead guilty and that he had been under the impression that he was pleading guilty to manslaughter rather than to murder. On February 22, 2013, the court held a hearing at which it continued the petitioner's sentencing until the petitioner secured a new attorney to represent him. Subsequently, Attorney Popkin was appointed to represent the petitioner. On April 11, 2013, Attorney Popkin filed a motion to withdraw the petitioner's guilty plea.

On May 30, 2013, the court held the sentencing hearing. During the hearing, the petitioner withdrew his motion to withdraw his guilty plea. The court then sentenced the petitioner to thirty-eight years of incarceration.

The petitioner subsequently filed a petition for a writ of habeas corpus. In his amended petition, the petitioner alleged that Attorney Gerace provided ineffective assistance during the plea negotiations by (1) misadvising him as to the negotiated plea agreement and his sentence exposure, (2) failing to make a thorough investigation of the facts, (3) failing to consult adequately with him prior to his guilty plea, and (4) failing to present

favorable information to the state and the court. The petitioner further alleged that Attorney Popkin provided him with ineffective assistance during sentencing by (1) failing to present any mitigating evidence to the court prior to sentencing and (2) failing to advocate zealously for him to secure the lowest sentence contemplated by the plea agreement. The habeas court, *Bhatt*, *J.*, denied the habeas petition. The court concluded that the petitioner had failed to prove that he was prejudiced by Attorney Gerace's performance and that he had failed to prove both deficient performance and prejudice regarding Attorney Popkin's representation. The petitioner filed a petition for certification to appeal, which the court granted, and this appeal followed. Additional facts will be set forth as necessary.

I

The petitioner's first claim is that the habeas court erred in concluding that he was not prejudiced by Attorney Gerace's allegedly inadequate representation of him during plea negotiations. We disagree.

The following additional procedural history is relevant to our review. During the habeas trial, the petitioner testified as to the following. On December 5, 2012, Attorney Gerace told him that the state had offered the petitioner a plea bargain for forty-five years, and he advised the petitioner not to take it because "it was too much time . . . ." Two individuals from Attorney Gerace's office subsequently visited the petitioner in prison and indicated that there was an offer to resolve the case with a plea for manslaughter for a term of forty years of incarceration. They did not, however, review police reports with the petitioner or discuss any defenses with him. Attorney Gerace later spoke with the petitioner over the phone and told him that he needed to make a decision with respect to the offer before the December 18, 2013 court date and that the state had reduced his charge to manslaughter. On December 18, 2013, the petitioner met with Attorney Gerace at the courthouse. During the meeting, Attorney Gerace was "aggressive" with the petitioner, yelled at him, "you did it; they've got you on video; you have to plead guilty," and stated that the only way forward was to "take the charges away from the prosecutor and put it in the hands of the judge and just say yes to all the questions." Following his guilty plea, the petitioner tried to contact Attorney Gerace a number of times to discuss his plea because he thought that he would be pleading guilty to manslaughter rather than murder. After he failed to reach Attorney Gerace, the petitioner wrote a letter to the court asking to withdraw his plea and filed a grievance complaint against Attorney Gerace.

Thereafter, Attorney Popkin was appointed to represent the petitioner. He visited the petitioner several times to discuss his motion to withdraw his guilty plea. Attorney Popkin told him that he was "not going to win

the motion because [the petitioner] had answered yes to all of the judge's questions." He also told the petitioner that he would lose if he went to trial. As a result, the petitioner agreed to withdraw his motion to withdraw his plea.

At the habeas trial, Attorney Popkin testified that he had advised the petitioner that the charge of murder carried a mandatory minimum sentence of twenty-five years of incarceration and that he also had discussed the petitioner's case with him generally, including possible defenses. He further testified that he told the petitioner that, if he withdrew his guilty plea, the petitioner would be facing a murder charge and a trial and that Attorney Popkin "thought it highly likely that he would be found guilty, and that he would receive a sentence of significantly longer than what he would get in pursuing the plea bargain." As a result, Attorney Popkin recommended that the petitioner withdraw his motion to withdraw his guilty plea.

The prosecutor, Michael Pepper, also testified at the petitioner's habeas trial. He testified that he decided to charge the petitioner with murder after reviewing videos of the incident, police reports, and statements from a number of witnesses. He never contemplated reducing the charge to manslaughter because the state's case "was remarkably strong" and the probability of conviction was "pretty high . . . ." As a result of the nature of the charges against the petitioner, he faced up to seventy years of incarceration if found guilty.

On January 6, 2020, the habeas court issued its memorandum of decision. With respect to the petitioner's ineffective assistance of counsel claim against Attorney Gerace, the court addressed only the prejudice prong of the test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and assumed, without deciding, that the deficient performance prong had been satisfied. The court concluded that the petitioner had failed to prove that he was prejudiced by any claimed deficient performance because he could not prove that, but for Attorney Gerace's allegedly deficient performance, he would have rejected the plea bargain and proceeded to trial. The court reasoned that the petitioner's ability to prove prejudice was "critically undermined by the fact that he did seek to withdraw his plea, was appointed alternate counsel who reviewed the entire file with the petitioner and provided him with the same advice—that he should accept the offer and not risk a trial—and then, based on that advice, the petitioner did indeed continue with his plea of guilty and eschewed a trial." The habeas court further noted that the evidence against the petitioner was overwhelming, as "at least three witnesses [had] identified him as the shooter, his DNA was on the murder weapon and the victim was shot five times at close range."[2] Moreover, as to the petitioner's allegation

that Attorney Gerace failed to present favorable information to the state and the court during plea negotiations in an effort to obtain a lesser charge or sentence, the court found that the petitioner could not prove prejudice. The court found that it was clear that the state was never going to reduce the charge to manslaughter and that the petitioner had failed to prove that a lesser sentence for the murder charge would have been available. Accordingly, the court concluded that the petitioner had failed to prove that he was prejudiced by any allegedly deficient performance of Attorney Gerace.

"[T]he governing legal principles in cases involving claims of ineffective assistance of counsel arising in connection with guilty pleas are set forth in *Strickland* [v. *Washington*, supra, 466 U.S. 668] and *Hill* [v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)]. [According to] *Strickland*, [an ineffective assistance of counsel] claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Under . . . *Hill* . . . which . . . modified the prejudice prong of the *Strickland* test for claims of ineffective assistance when the conviction resulted from a guilty plea, the evidence must demonstrate that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial. . . . In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition." (Emphasis in original; internal quotation marks omitted.) *Colon* v. *Commissioner of Correction*, 179 Conn. App. 30, 35–36, 177 A.3d 1162 (2017), cert. denied, 328 Conn. 907, 178 A.3d 390 (2018).

"The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . [T]his court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . .

"In evaluating the prejudice prong and the credibility of the petitioner's assertion that he would have insisted on going to trial but for [counsel's] deficient performance, it is appropriate for the habeas court to consider whether a decision to reject a plea offer, under the circumstances presented, would have been rational. . . . Additionally, a petitioner's assertion after he has accepted a plea that he would have insisted on going to trial suffers from obvious credibility problems . . . .

In evaluating the credibility of such an assertion, the strength of the state's case is often the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial . . . . Likewise, the credibility of the petitioner's after the fact insistence that he would have gone to trial should be assessed in light of the likely risks that pursuing that course would have entailed." (Citations omitted; internal quotation marks omitted.) *Lebron* v. *Commissioner of Correction*, 204 Conn. App. 44, 51–52, 250 A.3d 44, cert. denied, 336 Conn. 948, 250 A.3d 695 (2021).

As a preliminary matter, although the court assumed that Attorney Gerace performed deficiently for purposes of its analysis, it never suggested, much less concluded, that he performed deficiently. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland* v. *Washington*, supra, 466 U.S. 697. It is apparent that this is the course the habeas court followed. Thus, to the extent that the petitioner asserts that the court actually *found* that Attorney Gerace's performance was deficient, he is simply wrong.

We conclude that the habeas court's finding that the petitioner had failed to prove that there was a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial but for Attorney Gerace's allegedly deficient performance was not clearly erroneous. Although the petitioner testified that he would have gone to trial but for Attorney Gerace's advice, the habeas court, as the sole arbiter of the credibility of witnesses and the weight to be given to their testimony, was entitled to reject his testimony in light of the other evidence presented during trial. See *Lebron* v. *Commissioner of Correction*, supra, 204 Conn. App. 51. As the court observed in its memorandum of decision, the petitioner's ability to prove prejudice was critically undermined by the facts that he was appointed alternate counsel, he reviewed his entire file with his new counsel, his new counsel advised him to accept the plea bargain and forgo a trial, and, as a result of this advice, the petitioner decided to withdraw his motion to withdraw his plea and proceeded with his guilty plea. The state also had an unusually strong case against the petitioner. There was video surveillance footage depicting both the incident itself and the fight at the nightclub that preceded the incident, witnesses gave statements indicating that they saw the petitioner shoot the victim, and the petitioner's DNA was found on the murder weapon. The petitioner himself did not even dispute that he shot the victim; he asserted only that he did not intend to kill him. Consequently, there was sufficient reason for the court not to credit the petition-

er's testimony that he would not have pleaded guilty and, instead, would have gone to trial if properly advised by Attorney Gerace. As a result, the court's finding that the petitioner failed to prove prejudice was not clearly erroneous.

Moreover, to the extent that the petitioner claims that he was prejudiced by Attorney Gerace's failure to present favorable information to the state and the court during plea negotiations, we are unpersuaded. Apart from the petitioner's own testimony at the habeas trial that Attorney Gerace and representatives from his office had told him that the state had reduced the charge to manslaughter, no other evidence was presented during trial that demonstrated, or even suggested, that a lesser sentence would have been available but for Attorney Gerace's deficient performance. The prosecutor testified that he never would have considered reducing the charge to manslaughter as a result of the strength of the state's case and that the petitioner faced up to seventy years of incarceration. Attorney Popkin also testified that the court had indicated that the petitioner's sentence was "probably going to be in the high [thirties]" and that the state asked for forty-two years at the sentencing hearing. The habeas court was entitled to credit the testimony of the prosecutor and Attorney Popkin and to reject that of the petitioner. See *Lebron* v. *Commissioner of Correction*, supra, 204 Conn. App. 51. The court's finding that a lesser sentence could not have been obtained through more effective plea bargaining, thus, was not clearly erroneous. Accordingly, we conclude that the court properly determined that the petitioner had not proven his claims of ineffective assistance of counsel as to Attorney Gerace.

## II

The petitioner next claims that the court erred in concluding that Attorney Popkin effectively represented him during sentencing. The petitioner also argues that the court erred by applying the *Strickland* prejudice standard, which requires the petitioner to prove that there is a reasonable probability that the outcome of the proceeding would have been different; see *Strickland* v. *Washington*, supra, 466 U.S. 694; instead of presuming prejudice pursuant to the standard set forth in *United States* v. *Cronic*, 466 U.S. 648, 659–60, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), and *Davis* v. *Commissioner of Correction*, 319 Conn. 548, 555, 126 A.3d 538 (2015), cert. denied sub nom. *Semple* v. *Davis*,     U.S.     , 136 S. Ct. 1676, 194 L. Ed. 2d 801 (2016). We disagree with both assertions.

The following additional facts and procedural history are relevant. The petitioner's sentencing hearing occurred on May 30, 2013. During the hearing, Attorney Popkin presented mitigation evidence on the petitioner's behalf. Attorney Popkin told the court that the petitioner "understands and . . . accepts that he is

guilty of murder" and that the petitioner did not dispute that he shot the victim, causing his death. Attorney Popkin further stated that the petitioner was extremely remorseful for causing the death of the victim and that "he never intended in a moral sense" for the victim to pass away. Attorney Popkin then argued that the petitioner may have acted in a manner that he otherwise would not have on the night of the incident because he was under the influence of alcohol and drugs. He stated that the petitioner would not have acted this way normally because "his life experience up until that one night shows that he had no previous contact with the criminal justice system." Attorney Popkin then highlighted the facts that the petitioner had a difficult upbringing, including that his family often struggled to put food on the table and that his stepfather was abusive to his mother, and that the presentence investigation report (PSI) showed that he had been a consistent and dedicated worker throughout the years. Finally, Attorney Popkin told the court that he had spoken with the petitioner's father and that his father wanted the court to know that the petitioner was not a violent person, that he was generally humble and timid, and that, "while this happened and he understands this is what has happened, that really is not who his son is." Attorney Popkin asked the court to consider sentencing the petitioner to thirty-two years of incarceration. Although Attorney Popkin conceded that the minimum sentence of twenty-five years was not an appropriate sentence, he argued that a sentence of thirty-two years would be appropriate because "there are certain factors that I think do mitigate towards my client's benefit, including never having had any contact with the criminal justice system, being a productive member of society, [and] his honest and true remorse . . . ." The court, while acknowledging the presence of these mitigating factors, ultimately sentenced the petitioner to thirty-eight years of incarceration.

During the habeas trial, the petitioner testified that Attorney Popkin did not speak with his family members, have a psychologist or social worker interview him, or mention how many years of incarceration he would ask of the court. Andrew Meisler, a clinical and forensic psychologist who had evaluated the petitioner prior to the habeas trial, testified that he had diagnosed the petitioner with an "other specified trauma and stressor related disorder," which was similar to post-traumatic stress disorder. Meisler stated that this disorder, which had been caused by the petitioner's trauma history, may have impacted his behavior on the night of the shooting and that additional information about his diagnosis would have been relevant to his mental state for purposes of sentencing. He further opined that "the underlying post-traumatic stress symptoms, [the petitioner's] trauma history, social forces at play, a dangerous and fearful environment, [and] the added impact of sub-

stances all combined to diminish his capacity." Meisler admitted, however, that these factors did not diminish the petitioner's capacity to "form intent per se, but to manage his behaviors and control his emotional reactions in an appropriate way."

Attorney Popkin testified about his preparation for and strategy at the sentencing hearing. He testified that he spoke with the petitioner's father a couple of times before the petitioner was sentenced but that he was unable to call the father as a witness because he was out of town. He further testified that he did not have a psychological evaluation performed to explore the petitioner's mental state because it "didn't seem necessary. He seemed to be very cognizant of what was going on. He seemed to have a very good understanding of everything. He didn't present with any . . . issues in regards to that, so it didn't seem necessary." In regard to his decision to ask the court to sentence the petitioner to thirty-two years instead of the minimum of twenty-five, Attorney Popkin explained that it "was a significant crime, no question. The court had sort of indicated that it was going to be in the . . . high [thirties], so I wanted to have some credibility with the court and I indicated a number that I was hoping would . . . express the credibility and hopefully the judge would adopt it. I knew if I came in at [twenty-five] it was not really going to be helpful. So I was trying to mitigate or lessen the sentence as much as I could."

The habeas court concluded that Attorney Popkin did not render deficient performance and that, even if he did, the petitioner had failed to prove prejudice. First, the court found that Attorney Popkin was not deficient because he presented mitigating evidence by reiterating the petitioner's lack of involvement with the criminal justice system, his trauma from observing domestic violence, his strong work history, and his remorse. As a result, the court concluded that the procedure outlined in *Strickland*, rather than *Cronic*, applied. Second, the court found that, even assuming Attorney Popkin performed deficiently, the petitioner could not prove that he was prejudiced. Specifically, the court held that "all of the information presented to this court during the habeas trial was presented in sum and substance to Judge Clifford, either through the comments of Attorney Popkin, the petitioner or the PSI. Judge Clifford was aware of all the relevant circumstances of the petitioner, his upbringing, his trauma, his lack of criminal record, his genuine remorse and his acceptance of responsibility." Accordingly, the habeas court concluded that the petitioner had failed to prove prejudice because he had failed to present new, substantial, noncumulative mitigation evidence that was available at the time of sentencing but not presented to the sentencing court.

We are guided by the following legal principles.

"Criminal defendants have a constitutional right to effective assistance of counsel during the sentencing stage. . . . To establish prejudice, [i]t is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . A claimant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Hilton* v. *Commissioner of Correction*, 161 Conn. App. 58, 77, 127 A.3d 1011 (2015), cert. denied, 320 Conn. 921, 132 A.3d 1095 (2016).

As a threshold issue, we address the petitioner's claim that the court erred in failing to presume prejudice pursuant to *Cronic* and *Davis*. We conclude that the petitioner's claims relating to Attorney Popkin's representation are governed by *Strickland*, rather than *Cronic* and *Davis*, and that he was not entitled to any presumption of prejudice.

"In *United States* v. *Cronic*, supra, 466 U.S. 659–60, which was decided on the same day as *Strickland*, the United States Supreme Court elaborated on the following three scenarios in which prejudice may be presumed: (1) when counsel is denied to a defendant at a critical stage of the proceeding; (2) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) when counsel is called upon to render assistance in a situation in which no competent attorney could do so. Notably, the second scenario constitutes an actual breakdown of the adversarial process, which occurs when counsel completely fails to advocate on a defendant's behalf." (Internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, supra, 319 Conn. 555; see also *United States* v. *Cronic*, supra, 659–60. "Counsel's complete failure to advocate for a defendant . . . such that no explanation could possibly justify such conduct, warrants the application of *Cronic*." *Davis* v. *Commissioner of Correction*, supra, 556.

In *Davis*, our Supreme Court concluded that prejudice was presumed when the petitioner's counsel "entirely [had] fail[ed] to subject the prosecution's case to meaningful adversarial testing . . . ." (Internal quotation marks omitted.) Id., 568. During the sentencing hearing, the court recited the plea agreement's twenty year floor and twenty-five year cap and iterated that defense counsel had a right to argue for the appropriate sentence. Id., 551. After the court made preliminary remarks about how "it was the 'saddest thing' to sentence someone for killing another human being because 'that person's life is ruined' and no number of years will satisfy the victim's family," the prosecutor introduced the victim's family members, who described their loss. Id. The state then asked the court to sentence the petitioner to the maximum twenty-five year sentence.

Id. Thereafter, defense counsel responded, *"I agree with everything that everybody said so far, and I don't think there's anything left to say from my part."* (Emphasis in original; internal quotation marks omitted.) Id. Defense counsel said nothing else on the petitioner's behalf, and the court sentenced the petitioner to twenty-five years of imprisonment. Id.

Our Supreme Court concluded that "defense counsel's agreement with the prosecutor cannot realistically be characterized as a strategic decision properly analyzed under *Strickland.* Rather, defense counsel's conduct resembles the complete breakdown in the adversarial process that *Cronic* envisions. The petitioner's sentence was already capped at twenty-five years pursuant to the plea agreement and, thus, assenting to that sentence did nothing to advance the petitioner's interests." Id., 564. Accordingly, the court held that prejudice would be presumed and that the petitioner had asserted a valid claim of ineffective assistance of counsel. Id., 568.

In the present case, Attorney Popkin presented mitigation evidence at the petitioner's sentencing hearing. He highlighted the petitioner's remorse, his difficult upbringing, his positive work history, and his prior lack of involvement with the criminal justice system. Although Attorney Popkin did not ask for the twenty-five year minimum sentence for the strategic purpose of maintaining credibility with the court, he asked the court to consider sentencing the petitioner to thirty-two years of incarceration, which was less than the petitioner's maximum exposure, in light of the mitigating factors. See *James* v. *Commissioner of Correction*, 170 Conn. App. 800, 812, 156 A.3d 89 ("[O]ur review of an attorney's performance is especially deferential when his or her decisions are the result of relevant strategic analysis. . . . Thus, [a]s a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there [was] no . . . tactical justification for the course taken." (Internal quotation marks omitted.)), cert. denied, 325 Conn. 926, 168 A.3d 494 (2017). Attorney Popkin, therefore, did advocate on the petitioner's behalf during the sentencing hearing. Accordingly, the habeas court correctly concluded that no presumption of prejudice was justified and that *Strickland*, rather than *Cronic*, controls.

We now turn to the petitioner's claim that the court improperly concluded that he had failed to prove he was prejudiced by Attorney Popkin's performance. After a careful review of the record, we conclude that the habeas court did not err in finding that the petitioner has failed to prove prejudice.[3] As the habeas court observed, "all of the information presented to this court during the habeas trial, was presented in sum and substance to Judge Clifford, either through the comments of Attor-

ney Popkin, the petitioner or the PSI."[4] The trial court, after referencing these mitigating factors, sentenced the petitioner to thirty-eight years of incarceration, stating that it had "come up with a number . . . that . . . is appropriate under all the circumstances here, the seriousness of this, the loss to the victims, looking at the background of this defendant and he's going to spend, obviously, the majority of his life in prison . . . ." Although the petitioner argues that he was prejudiced by Attorney Popkin's failure to introduce additional mitigation evidence concerning his mental health, there simply is no evidence in the record indicating that the court would have given the petitioner a lesser sentence if such additional evidence, or other mitigation evidence that supplemented what was in the PSI, had been presented.[5] In light of the strength of the state's case, the seriousness of the crime, and the court's awareness of the pertinent mitigation evidence, there was not a reasonable probability that the petitioner would have received a lesser sentence but for any deficient performance by Attorney Popkin. See *Hilton* v. *Commissioner of Correction*, supra, 161 Conn. App. 77. Accordingly, we conclude that the habeas court properly concluded that his ineffective assistance of counsel claim regarding Attorney Popkin's representation fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The state also charged the petitioner with carrying a pistol without a permit in violation of General Statutes § 29-35 and possession of a controlled substance in violation of General Statutes (Rev. to 2009) § 21a-279 (c). Following the petitioner's plea of guilty, the state entered a nolle prosequi as to these charges.

[2] We note also that grainy videos of the incident, which indistinctly show the shooting, were entered into evidence.

[3] The habeas court also concluded that Attorney Popkin did not render deficient performance when representing the petitioner during the sentencing hearing. In light of our conclusion that the habeas court did not err in concluding that the petitioner failed to prove prejudice, we need not address whether Attorney Popkin's performance was deficient. See *Strickland* v. *Washington*, supra, 466 U.S. 697 ("[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed").

[4] The PSI contained information concerning (1) the petitioner's upbringing, including that he had been significantly impacted by the domestic violence that he witnessed and that his family had struggled financially, (2) his positive education and work records, (3) his feelings of depression, (4) his casual drug and alcohol use, including the facts that he had smoked marijuana, used ecstasy, and was intoxicated on the night of the incident, (5) his lack of prior involvement with the criminal justice system, and (6) his family members' statements that he had never been a violent person. The PSI also noted that the victim's mother had asked that the court sentence the petitioner to the maximum penalty allowed under the plea agreement. The PSI recommended that the petitioner be sentenced to a period of incarceration but did not provide a recommendation for the number of years of incarceration to which he should be sentenced.

[5] In support of this argument, the petitioner highlights the fact that Meisler had diagnosed him with several mental health conditions as a result of the traumas he experienced during his childhood. Meisler had opined that these traumas, along with his post-traumatic stress symptoms, explained the petitioner's "exaggerated response to fear" and helped "shed a light on his behavior in a way that had not been done so previously." We disagree with the petitioner that such additional mitigation evidence would have enabled him to demonstrate a reasonable probability that, but for Attorney Popkin's

alleged unprofessional errors, the result of the proceeding would have been different. As the habeas court observed, the trial court was aware of the petitioner's recitation of his trauma history from the PSI, and any additional trauma history that the petitioner introduced during the habeas trial would have been evidence that "merely supplements or is cumulative to that which was presented to the sentencing judge." Moreover, although Meisler stated that the petitioner's post-traumatic stress symptoms and trauma history diminished his capacity, Meisler opined that they diminished the petitioner's capacity with respect to only his ability to manage his behaviors and control his emotional reactions in an appropriate way; they did not diminish his capacity to form the intent to kill. Accordingly, we are unpersuaded that additional mitigation evidence concerning the petitioner's mental health would have caused the trial court to give the petitioner a lesser sentence.

————————————————————