******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IBRAHEEN OLORUNFUNMI *v.* COMMISSIONER OF CORRECTION
## (AC 44187)

Alexander, Clark and Palmer, Js.

*Syllabus*

The petitioner, a citizen of Nigeria, sought a writ of habeas corpus, claiming, inter alia, that his trial counsel, E, rendered ineffective assistance for having failed to advise him properly about the immigration consequences of his guilty plea to the reduced charge of larceny in the second degree. During the trial court's canvass of the petitioner in the plea proceeding, the petitioner stated that he understood the possible immigration consequences of his guilty plea and that E had discussed those consequences with him. E also stated that he had discussed those consequences with the petitioner. Thereafter, the petitioner was deported to Nigeria on the ground that the larceny conviction constituted an aggravated felony under federal law, which mandated deportation for such offenses in virtually all cases. At the habeas trial, E testified, inter alia, that he discussed with the petitioner the immigration consequences of his guilty plea, and the petitioner was not concerned about deportation but, rather, his sole concern was the term of incarceration he would receive upon conviction and he sought to minimize his sentence. The petitioner testified, inter alia, that when he entered the guilty plea, he was unaware of its immigration consequences and that E had told him that a conviction for larceny in the second degree would not make him eligible for deportation. The court rendered judgment denying the habeas petition and denied the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court correctly denied the petition for certification to appeal from the denial of the petition for a writ of habeas corpus, as the petitioner failed to establish that the issues were debatable among jurists of reason, that a court could resolve the issues in a different manner, or that they were adequate to proceed further: there was ample evidence in the record to support the habeas court's implicit finding that the petitioner failed to demonstrate that he would not have pleaded guilty and would have proceeded to trial if he had been properly informed about his deportability; moreover, the habeas court deemed E's testimony highly credible, including his testimony that the petitioner was concerned only with the length of the sentence he would receive upon pleading guilty and not the deportation consequences of any such plea and found the petitioner's testimony contradicting E in virtually all material respects to be entirely unworthy of belief; furthermore, this court rejected the petitioner's claim that, because the habeas court's evaluation of his credibility was predicated on the transcript of his deposition testimony and not on a firsthand observation of his conduct and demeanor, its credibility assessment warranted less deference, that argument having been unsupported by any authority and incompatible with the bedrock principle that the habeas court sits as the trier of fact, the habeas court found the testimony of E more credible than the petitioner's, and this court was bound by those credibility determinations.

Argued November 10, 2021—officially released March 22, 2022

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Kwak, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*J. Patten Brown III*, assigned counsel, with whom, on the brief, was *Abby Marchinkoski*, for the appellant

(petitioner).

*Christopher Alexy*, senior assistant state's attorney, with whom, on the brief, were *Margaret E. Kelley*, state's attorney, and *Jo Anne Sulik*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

PALMER, J. The petitioner, Ibraheen Olorunfunmi, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus. On appeal, the petitioner, a Nigerian citizen, claims that the habeas court abused its discretion in denying the petition for certification to appeal because his constitutional right to the effective assistance of counsel was violated due to the failure of his trial counsel to advise him, as required by *Padilla* v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), that a plea of guilty to larceny in the second degree would almost certainly result in his deportation to Nigeria, which, in fact, occurred following his plea to that offense and subsequent sentencing. We conclude that the petitioner has not demonstrated that the habeas court abused its discretion in denying the petition for certification, and, accordingly, we dismiss the appeal.

The memorandum of decision of the habeas court sets forth the following facts and procedural history concerning the petitioner's underlying conviction. "In the summer of 2014, the West Haven Police Department received a complaint from [the] Darien Rowayton Bank [bank] concerning a possible fraud. [The bank investigated the complaint and] determined that in June of 2014, the bank had received two e-mails from a longtime customer requesting wire transfers, one dated June 9, 2014, and another dated June 11, 2014. The June 9 transfer was for $23,855, and [the] June 11 . . . transfer was for $6000. [The bank was] contacted by the . . . actual customer . . . that he never sent the e-mails or requested wire transfers. [During its investigation, the bank] learned . . . that the $23,855 wire transfer was sent to the TD Bank North from West Haven . . . to an account in the [petitioner's] name. There were [surveillance] videos of the [petitioner] making several withdrawals on days following the transfer. The $6000 transfer went to an account for a business called Palms Fashion [Inc.] in New York City. On July 4, 2014, the [petitioner] wanted to pay some of the money back, $3000 now, with the remainder over time. . . .

"The West Haven Police Department contacted the [petitioner], who wanted to talk with the police, but was never able to meet up with them. At that point, [the petitioner retained] an attorney . . . who contacted the West Haven Police Department. The vice president of the bank . . . informed the West Haven Police Department that the problem arose as there was a slight difference in the correct e-mail address to their customer and the one that they received for the wire transfer. They contacted the [petitioner] and suggested to him that he return the money, which he never did. The [petitioner] claimed he was expecting a wire transfer, thus, there was confusion on his part. The bank

had paid out $30,000 . . . of the [money involved]. The customer noted to the West Haven Police Department that he believes that someone had hacked into his [account], but he had changed his password and believes that the hackers had made a slight change in his e-mail address and attempted [to hack into] not only that account but other accounts as well. . . .

"The petitioner was initially charged with one count of larceny in the first degree in violation of General Statutes § 53a-122.[1] On April 22, 2015, the petitioner and [his counsel, former Public Defender David] Egan, appeared before the [trial] court, *Iannotti*, *J.*, for a change of plea. The plea agreement negotiated with the state resulted in the petitioner pleading guilty in a substitute information to one count of larceny in [the] second degree in violation of General Statutes § 53a-123 (a) (2).[2] The prosecutor, Supervisory Assistant State's Attorney Cornelius Kelly, indicated to the [trial] court that because of defense counsel's efforts, the state was willing to agree to let the petitioner plead guilty to the reduced charge of larceny in the second degree [and to agree to a sentence of three years' imprisonment]. This offer was only open to the petitioner for that day and would then be withdrawn. [The prosecutor also informed the trial court that the petitioner had never paid back any of the stolen money]. . . .

"The [trial] court canvassed the petitioner about his guilty plea. The petitioner, who had informed the court that he was born in Nigeria, was asked if he understood that if he is not a citizen of the United States that his conviction had negative deportation and immigration consequences. Specifically, that he could be deported or excluded from admission to the United States. The petitioner acknowledged that he was aware of these consequences from his discussions with . . . Egan, but also emphasized that his life was at stake. The [trial] court asked . . . Egan if he had discussed deportation with the petitioner. . . . Egan [responded as follows]: I should put on the record that not only did I discuss this with my client . . . I [had] occasion to speak to an immigration attorney who was referred to me by my client. I spoke to him in Hartford yesterday. We had a thorough discussion of the situation with respect to, you know, pleading to—actually, the charge that we were contemplating pleading to yesterday was the charge of larceny in the first degree. Now, I was able to, I believe, convince [the prosecutor] that perhaps we should get the charge reduced to the charge of larceny in the second degree, and it was solely in view of the possible deportation consequences that I suggested that this matter be reduced to a charge of larceny in the second degree. I explained to my client that I am not an immigration attorney, but that, nonetheless, we did so in the hope that it—that this would lessen the likelihood of his deportation, although, you know, that's purely a guess on my part. I'm not an immigration attor-

ney. And clearly, by pleading guilty to these charges, he is subjecting himself to removal from this country. That's all been explained to him. . . .

"The [trial] court indicated to . . . Egan that it did not want to know the contents of the discussion he had with the immigration attorney. The [trial] court inquired if . . . Egan had passed those contents on to the petitioner. . . . Egan answered in the affirmative. . . . The canvass of the petitioner continued but stopped when the petitioner requested more time to consider the plea offer. The [trial] court indicated that the petitioner had months and months to consider resolving the case and that the state's offer, now for a lesser offense, was available only that day. . . . The petitioner could either accept the plea offer or proceed to trial on the charge of larceny in the first degree [which, the trial court emphasized, carries a maximum possible penalty of twenty years' imprisonment as distinguished from larceny in the second degree, which carries a maximum possible penalty of ten years' imprisonment]. Although the petitioner at first indicated that he wanted to have a trial, he instead accepted the plea offer. . . . The [trial] court accepted the guilty plea and found that it was knowing, voluntary, and made with the assistance of competent counsel. . . . The matter was continued for the sentencing. . . .

"On July 21, 2015, the petitioner and . . . Egan appeared before Judge Iannotti for the sentencing. . . . Egan noted that the case was extensively pretried . . . [that] [t]he [trial] court [was] familiar with the background [of this case] and [that he had] explained to [the petitioner] many, many times that his biggest problem . . . [was] not necessarily with the disposition that [was] about to be imposed by [the trial] court, but . . . [was] with the immigration authorities. . . . The petitioner addressed the [trial] court and asked that it impose a lower sentence than he had agreed to accept when he pleaded guilty. . . . Given the severity of the offense, the [trial] court imposed the agreed upon sentence of three years to serve, followed by three years of special parole, because it was fair and just. . . . The [trial] court also ordered the special conditions that the petitioner obtain gainful and verifiable employment, as well as [pay] restitution of $23,855 to the . . . [b]ank." (Emphasis omitted; footnotes added; internal quotation marks omitted.)

Although he did not file a direct appeal from the judgment of conviction that followed his guilty plea and sentencing, in August, 2015, the self-represented petitioner filed a petition for a writ of habeas corpus seeking to have his conviction vacated, and in June, 2016, through counsel, he filed an amended habeas petition. Thereafter, in March, 2017, the petitioner was deported to Nigeria. Subsequently, on January 11, 2018, the petitioner, again through counsel, filed a second

amended habeas petition seeking similar relief and alleging ineffective assistance of counsel predicated on the claim that his trial counsel, Egan, had failed to advise him adequately regarding the deportation consequences of his guilty plea to larceny in the second degree,[3] an offense deemed an "aggravated felony" under the federal Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., which mandates deportation for such offenses in virtually all cases.[4]

At the habeas trial, the petitioner adduced testimony from several witnesses, including Egan, who testified that the petitioner's criminal case was relatively uncomplicated but that he had had great difficulty obtaining information from the petitioner for the purpose of investigating and presenting a possible defense because the petitioner was evasive and not forthcoming with regard to such information. According to Egan, he and the petitioner met regularly and frequently, and the petitioner's sole concern with respect to the case was the term of incarceration he would receive upon conviction. To that end, Egan further explained, the petitioner accepted the state's offer of a guilty plea to larceny in the second degree with an agreed upon sentence of three years' imprisonment because that plea bargain resulted in a significant reduction in the amount of prison time the petitioner likely would be required to serve were he to be convicted of larceny in the first degree following a trial.

Egan also testified that the petitioner was aware of the deportation and immigration ramifications of his case from the very beginning and, in fact, in a letter to the petitioner dated December 3, 2014, Egan stated that, "as I told you today, the crime with [which] you are charged [larceny in the first degree] will almost certainly result in your deportation upon conviction."[5] In his testimony, Egan explained that he also subsequently advised the petitioner that he would be deported from the United States as a result of a guilty plea to larceny in the second degree, and although Egan could not recall the exact language he used in so advising the petitioner, Egan stated, " 'I told him . . . that he was going to be exposing himself, and in all likelihood would be deported, should he plead [guilty] to the charge of larceny in the second degree.' " Egan also testified that a few weeks before the plea was entered in court, the petitioner informed Egan that he had written to his immigration attorney, Justin Conlon, and the petitioner asked Egan to speak to Conlon, which Egan did. A few weeks after entering his guilty plea, the petitioner wrote to Egan and told him, among other things, that he wanted to seek asylum in the United States. Thereafter, shortly before sentencing, the petitioner contacted Egan and asked him to do everything in his power to convince Judge Iannotti to impose a two year sentence rather than a three year sentence.[6]

The petitioner also presented testimony from Conlon, who explained that, under applicable federal law, larceny in the second degree is considered an aggravated felony, the highest category of criminal conviction for removal purposes and one for which deportation is virtually inevitable. As such, Conlon further testified, the petitioner's deportation was "very foreseeable" because exceptions to removal upon conviction of an aggravated felony are extremely limited.

The petitioner testified, as well. Because he had been deported prior to his habeas trial, the petitioner's testimony was presented by way of a transcript of his telephonic deposition. With respect to the larceny charge to which he had pleaded guilty, the petitioner provided the habeas court with a version of the facts that effectively exonerated him from any criminal culpability.[7] As the habeas court explained, "[t]he petitioner [also] testified that his understanding was that he could only be deported if he were convicted of larceny in the first degree. Furthermore, the petitioner testified that [Egan] told him that a conviction for larceny in the second degree would not make him eligible for deportation, and that this was the only reason that he agreed to plead guilty. The petitioner denied that his counsel explained to him that an aggravated felony would almost certainly result in his deportation. The petitioner stated that he would have proceeded to trial had he understood that not being convicted at trial was his best chance of his not being deported. The petitioner denied telling the bank official that he had used the [stolen] funds to pay bills. The petitioner did not recall telling the police and bank officials that his account must have been hacked. Lastly, the petitioner testified that before [his] guilty plea . . . Egan wanted to speak with his immigration attorney, after which . . . Egan told the petitioner that larceny in the second degree is not a deportable offense."

In its memorandum of decision following the trial, the habeas court rejected the petitioner's claims and denied his second amended habeas petition. The court characterized Egan's testimony as "highly credible" and found that Egan had "explained the deportation and immigration consequences to the petitioner," that Egan "was adamant that the petitioner faced deportation," and that he had "informed [the petitioner] at the very onset . . . that deportation was almost certain . . . ." The court further found that, "[a]lthough the larceny in the first degree charge was reduced to larceny in the second degree in the hope of reducing the chance of deportation, the petitioner was warned that he was subjecting himself to removal from the United States" and ultimately accepted the offer of a plea to the lesser charge "after he was advised regarding the possible consequences of going to trial on the more severe charge." The court also found that, as reflected in the

transcript of the plea proceeding, "[i]t is readily apparent that the petitioner was only concerned about the length of his term of incarceration" and that, in light of the fact that he was aware of the deportation consequences of his plea, "the petitioner's focus thereafter on how much time to spend in prison is both logical and reasonable."

In contrast to Egan's testimony, the habeas court discredited the testimony of the petitioner. Specifically, the court stated: "The petitioner, contrary to . . . Egan, lacks all credibility and his relationship with the truth is fleeting and transactional. The court does not credit the petitioner's testimony in support of his claims. The petitioner's description of the people and underlying events that led to his charges, which were not provided to . . . Egan during the course of his representation, is not credible. The correspondences between the petitioner and . . . Egan reflect a pattern of feigned ignorance by the petitioner, which this court finds is indicative of deception rather than a lack of understanding. The petitioner's repeated assertions, made *after* court proceedings, that he did not understand or expected something other than what occurred are not believable. The court also does not find credible the petitioner's . . . assertion that . . . Egan failed to explain [the] deportation and immigration consequences to him, as well as that [Egan] told the petitioner after consulting with the immigration attorney that larceny in the second degree is not a deportable offense. This lack of credibility is also reflected in a transcript of [the] immigration proceedings. The petitioner told the immigration judge that . . . Egan lied to him and told him that he was pleading [guilty] to larceny in the fourth degree, as well as that he would not be deported if he pleaded [guilty] to larceny in the second degree. Lastly, the court also does not find credible the petitioner's assertion that he would have maintained his plea of not guilty and proceeded to trial [had he known that he would be deported as a result of his guilty plea to larceny in the second degree]." (Emphasis in original.)

The petitioner thereafter filed a petition for certification to appeal from the habeas court's denial of his petition for a writ of habeas corpus. The habeas court denied the petition for certification to appeal, and this appeal followed. The petitioner contends that the court should have granted his petition for certification to appeal because he established that Egan's advice to him about the deportation consequences of his guilty plea to larceny in the second degree was deficient under the sixth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9, of the state constitution.[8] The petitioner further maintains that he would not have entered the plea and would have proceeded to trial if Egan had advised him adequately about those consequences. Even if we assume, arguendo, that Egan's advice in that regard was consti-

tutionally infirm, we conclude that the petitioner cannot prevail on appeal because he has failed to demonstrate that, with different advice, he would have rejected the state's plea offer and opted for a trial instead.

We commence our review of the petitioner's claim by reciting the governing legal principles. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the [denial] of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . To prove that the denial of his petition for certification to appeal constituted an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Internal quotation marks omitted.) *Noze* v. *Commissioner of Correction*, 177 Conn. App. 874, 882, 173 A.3d 525 (2017).

The principles applicable to the petitioner's claim of ineffective assistance of counsel are similarly well settled. "A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings [including those related to the entering of a guilty plea]. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel." (Footnote omitted; internal quotation marks omitted.) Id., 883–84; see id., 884 n.3. Claims of constitutionally inadequate representation in connection with the decision to plead guilty are governed by *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). "[According to] *Strickland*, [an ineffective

assistance of counsel] claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Under . . . *Hill* . . . which . . . modified the prejudice prong of the *Strickland* test for claims of ineffective assistance [of counsel] when the conviction resulted from a guilty plea, the evidence must demonstrate that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial. . . . In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition." (Emphasis in original; internal quotation marks omitted.) *Cruz* v. *Commissioner of Correction*, 206 Conn. App. 17, 24, 257 A.3d 399, cert. denied, 340 Conn. 913, 265 A.3d 926 (2021). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies. . . . If it is [more efficient] to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (Internal quotation marks omitted.) Id., 25. Moreover, "[t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . [T]his court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) Id., 24–25.

"A claim of ineffective assistance of counsel raised by a petitioner who faces mandatory deportation as a consequence of his guilty plea is analyzed more particularly under *Padilla* v. *Kentucky*, [supra, 559 U.S. 356], a case in which the United States Supreme Court held that counsel must inform clients accurately as to whether a guilty plea carries a risk of deportation. Id., 368–69. *Padilla* recently was analyzed under Connecticut law in *Budziszewski* v. *Commissioner of Correction*, 322 Conn. 504, 507, 142 A.3d 243 (2016), where[in] our Supreme Court concluded that, although there are no precise terms or one-size-fits-all phrases that counsel must use . . . [i]n circumstances when federal law mandates deportation . . . counsel must unequivocally convey to the client that federal law mandates deportation as the consequence for pleading guilty." (Internal quotation marks omitted.) *Noze* v. *Commissioner of Correction*, supra, 177 Conn. App. 885.

The petitioner contends, contrary to the determina-

tion of the habeas court, that Egan failed to advise him, as required by *Padilla*, that deportation was virtually certain if he pleaded guilty to larceny in the second degree. He further claims that he would not have entered a plea of guilty to that offense and insisted on a trial if he had been advised that he faced a high likelihood of deportation following a plea to second degree larceny. We need not decide whether Egan's advice to the petitioner in regard to his deportability was constitutionally adequate because we conclude that, even if that advice was deficient, the petitioner has failed to demonstrate that he was prejudiced thereby.

"To satisfy the prejudice prong [of the *Strickland-Hill* test], the petitioner had the burden to prove that, absent counsel's alleged failure to advise him in accordance with *Padilla*, it is reasonably probable that he would have rejected the state's plea offer and elected to go to trial." Id., 886. This requirement presents a significant hurdle for the petitioner. As the United States Supreme Court recently explained in the context of a claim of ineffective assistance of counsel which, like the present one, was predicated on an alleged *Padilla* violation, "[s]urmounting *Strickland*'s high bar is never an easy task . . . and the strong societal interest in finality has special force with respect to convictions based on guilty pleas. . . . [Therefore] [c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (Citations omitted; internal quotation marks omitted.) *Lee* v. *United States*, U.S. , 137 S. Ct. 1958, 1967, 198 L. Ed. 2d 476 (2017); see also *Budziszewski* v. *Connecticut Judicial Branch*, 199 Conn. App. 518, 525–27, 530, 237 A.3d 792, cert. denied, 335 Conn. 965, 240 A.3d 283 (2020).

Although the habeas court based its decision on the performance prong of *Strickland*—concluding that the advice Egan gave to the petitioner with respect to deportation satisfied the *Padilla* standard—and did not expressly address the prejudice prong of the *Strickland-Hill* test, the court did explicitly reject, as lacking in credibility, the petitioner's testimony that he would not have pleaded guilty to second degree larceny and, instead, would have proceeded to trial if he had known that a conviction of that offense was highly likely to result in his deportation. This credibility determination of the court leads inexorably to the conclusion that the court implicitly found that the petitioner failed to meet his burden of establishing that he was prejudiced by Egan's allegedly deficient advice with respect to the deportation consequences of his guilty plea because to prove prejudice, the petitioner was required to demonstrate a reasonable probability that he agreed to plead guilty only because he was unaware that he would be

deported as a result of the plea.

The habeas court's implicit finding that the petitioner failed to demonstrate that he would not have pleaded guilty and would have proceeded to trial if he had been properly informed about his deportability is amply supported by the record. First, the court had strong reason to disbelieve the petitioner's testimony generally. For example, having determined that Egan was a highly credible witness, the court reasonably found that the petitioner's testimony contradicting Egan's testimony in virtually all material respects was entirely unworthy of belief. Indeed, several of the petitioner's assertions were facially implausible, among them: his testimony essentially denying any responsibility for the theft of the money at issue in the case despite the strength of the state's evidence against him; his claim that Egan told him that larceny in the second degree was not a deportable offense notwithstanding Egan's statement, reflected in the record of the plea proceeding, that, by entering a guilty plea to that charge, the petitioner "clearly . . . [was] subjecting himself to removal from this country"; (emphasis omitted; internal quotation marks omitted); and his contention before the federal immigration judge that Egan had lied and told him that he was pleading guilty to larceny in the fourth degree rather than to larceny in the second degree even though it is perfectly clear from the transcript of the plea proceeding that the petitioner pleaded guilty to second degree larceny and knew full well that he was doing so.

Moreover, Egan testified that the petitioner's sole concern was the length of the sentence he would receive upon pleading guilty in accordance with the state's plea offer and not the deportation consequences of any such plea. In light of this testimony, along with Egan's assertion that the petitioner pleaded guilty to larceny in the second degree to avoid the considerably harsher consequences of being convicted of larceny in the first degree, the court was fully entitled to disbelieve the petitioner's contention that he would not have agreed to that plea if he had known that doing so carried with it such a high risk of deportation.

Finally, the petitioner adduced no evidence, other than his own uncorroborated and self-serving testimony, to support his assertion that, when he entered his guilty plea, he did so only because he understood that he would not be subject to deportation. It is true, of course, that, prior to entering his plea, the petitioner contacted Egan and asked him to speak with his immigration attorney, Conlon. That demonstrates, however, only that the petitioner wanted to know about his prospects for deportation following a conviction of larceny in the second degree, not that he would have refused to enter the plea if he had understood that it almost surely would lead to his removal. In addition, the petitioner informed Egan prior to his sentencing that he

planned to apply for asylum in the United States. The petitioner's expressed intent to seek asylum does not further his claim that he pleaded guilty with the understanding that he would not be deported; in fact, it undermines his claim because asylum is available to those who *are subject to removal* from this country but who can establish that deportation would be sufficiently perilous to warrant their remaining here.

On appeal, the petitioner points to evidence that he presented at the habeas trial which, he claims, supports his assertion that he would have rejected the plea deal and proceeded to trial if he had known that he would be deported. In particular, he adduced evidence that he "faced a serious risk of experiencing violence and persecution" in Nigeria, even from his own family, as a member of the LGBTQ community and because of his conversion to Christianity. The petitioner's contention however, predicated on such evidence, represents precisely the kind of "post hoc assertion" that the United States Supreme Court, in *Lee* v. *United States*, supra, 137 S. Ct. 1967, identified as insufficient to establish prejudice for purposes of an alleged *Padilla* violation. Under *Lee*, a defendant who maintains that he would have refused to plead guilty if he had been advised properly about the near certainty of deportation must substantiate his contention with evidence *contemporaneous* with his plea and sentencing. Id. In the present case, the petitioner presented no such proof, and his failure to do so, especially in view of Egan's testimony that the petitioner was concerned only with the amount of prison time that he would receive, is fatal to his claim of prejudice.

The petitioner further argues that, because the habeas court's evaluation of the petitioner's credibility was predicated on a "cold" record, namely, the transcript of the petitioner's deposition testimony, rather than on a firsthand observation of the petitioner's conduct and demeanor, a "significantly lower . . . level of deference" to the court's credibility assessment is warranted than the deference to which such an evaluation ordinarily would be entitled. We reject this argument as unsupported by any authority and incompatible with the bedrock principle that fact-finding is the sole responsibility of our trial courts. See *State* v. *Correa*, 340 Conn. 619, 691, 264 A.3d 894 (2021) (appellate tribunal "lacks the authority to find facts"); *Otto* v. *Commissioner of Correction*, 161 Conn. App. 210, 223, 136 A.3d 14 (2015) ("[i]t is axiomatic that, as an appellate court, we do not reevaluate the credibility of testimony"), cert. denied, 321 Conn. 904, 138 A.3d 281 (2016). In the present case, moreover, the court expressly credited Egan's testimony, which the petitioner contradicted in many, if not all, material respects. The court, having had the opportunity to observe firsthand Egan's "highly credible" testimony, had a sound basis for rejecting the petitioner's version of the relevant events. Indeed, as

we have explained, some of the petitioner's testimony defied credulity in light of the undisputed facts. In such circumstances, there is no basis whatsoever for second-guessing any of the court's credibility findings.[9]

We conclude, therefore, that the petitioner has failed to establish that his ineffective assistance of counsel claim is debatable among jurists of reason, that a court could resolve the claim in a different manner or that the question presented deserves encouragement to proceed further. Accordingly, the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny, as defined in section 53a-119, and . . . . (2) the value of the property or service exceeds twenty thousand dollars . . . ."

Larceny in the first degree is a class B felony that carries with it a possible maximum penalty of twenty years' imprisonment. See General Statutes §§ 53a-122 (c) and 53a-35a (6).

[2] General Statutes § 53a-123 (a) provides in relevant part: "A person is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ."

Larceny in the second degree is a class C felony that carries with it a maximum penalty of ten years' imprisonment. See General Statutes §§ 53a-123 (c) and 53a-35a (7).

[3] The petitioner also raised a due process claim alleging that his guilty plea was not made knowingly, intelligently and voluntarily because he did not adequately understand the deportation consequences of his plea. That claim, however, which the habeas court ultimately deemed abandoned, is not at issue in this appeal. Nevertheless, as the habeas court observed, both the evidence necessary to establish that abandoned claim and the relief sought thereunder are the same as the evidence adduced and the relief sought in connection with the claim that is the subject of this appeal.

[4] See, e.g., *Budziszewski* v. *Commissioner of Correction*, 322 Conn. 504, 507, 142 A.3d 243 (2016) (explaining that "[f]or crimes designated as aggravated felonies . . . federal law mandates deportation almost without exception"). We note that the petitioner was deportable both for his conviction of larceny in the second degree and for overstaying his work visa, which had expired. The habeas court determined, and the parties do not dispute, that this appeal could result in meaningful relief to the petitioner, despite his deportability for overstaying his visa, because his larceny conviction results in the petitioner being barred from readmission to the United States for twenty years, whereas overstaying his work visa results in a ten year bar to readmission.

[5] Egan also testified that he had represented between twenty-five and thirty defendants who faced deportation and immigration consequences as a result of their offenses, that he had attended a series of seminars on the subject and was familiar with the relevant case law and that he often discussed cases involving immigration issues with other experienced criminal defense attorneys.

[6] The letters that Egan and the petitioner exchanged both before and after his guilty plea and sentencing also addressed several other topics, including the computation of the petitioner's sentence, the presentence investigation report and restitution.

[7] The habeas court summarized the petitioner's version of those facts as follows: "The petitioner provided information about various individuals and events that explained how the victim's funds came into his possession. According to the petitioner, he was contacted by a friend in Nigeria. That friend, in turn, gave [the phone number of his friend] (an individual identified by the petitioner as 'CJ') . . . to the petitioner, who did not know this individual. The petitioner was told to open an account so that he could receive funds from CJ's clients in the United States. The petitioner stated

that the business being conducted, for which this account was needed to receive funds, was the import/export of automobiles. The victim's funds were transferred into the petitioner's account, and the petitioner on three occasions withdrew separately $6000, $3000 and $2000. The petitioner testified that CJ told the petitioner to give $20,000 he had withdrawn to yet another friend, one Johnson Adewale, who stayed in New York but came to New Haven to get the money."

[8] We note that the petitioner does not contend that the state constitution affords him any greater protection with respect to his right to the effective assistance of counsel than does the federal constitution.

[9] The petitioner also raised the claim in the habeas court that Egan rendered ineffective assistance by inadequately investigating his case and thereby failing to develop a viable defense. The petitioner did not prevail on this claim, which he renews on appeal, albeit in a single paragraph of his brief in which he fails to cite any authority to support his allegation. The petitioner adduced no expert testimony in the habeas court with respect to this claim and, on appeal, he essentially contends that Egan could have done more by way of an investigation. Suffice it to say that, on appeal, the petitioner has failed to demonstrate why Egan's representation was deficient in this regard or how the petitioner was prejudiced by Egan's allegedly inadequate investigation.

––––––––––––––––––––––––––