******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

RODNEY CHASE *v.* COMMISSIONER
OF CORRECTION
(AC 44048)

Moll, Suarez and Lavine, Js.

*Syllabus*

The petitioner, who had previously been convicted of sexual assault in the
first degree and risk of injury to a child, sought a writ of habeas corpus
claiming, inter alia, that his trial counsel had provided ineffective assis-
tance. Following a trial, the habeas court rendered judgment denying the
petition, concluding that trial counsel's performance was not deficient.
Thereafter, the habeas court granted the petition for certification to
appeal, and the petitioner appealed to this court. *Held* that the habeas
court correctly concluded that the petitioner failed to prove that his
trial counsel's performance was deficient: the habeas court reasonably
concluded that the petitioner did not overcome the presumption that
his trial counsel had familiarized himself with topics germane to child
sexual assault cases, as the petitioner failed to present credible evidence
that his counsel had failed to achieve a reasonable degree of familiarity
with various materials relevant to child forensic interview protocol,
disclosure literature and validation criteria; moreover, this court could
not second-guess on appeal the court's credibility determinations regard-
ing trial counsel's testimony that he had retained an expert, S, to assist
with the defense, and the petitioner did not overcome the presumption
that trial counsel's decision regarding what topics to develop during the
examination of S and which topics to reserve for cross-examination of
the state's expert witnesses was based on sound trial strategy.

Argued November 29, 2021—officially released February 8, 2022

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Chaplin*, *J.*; judgment
denying the petition, from which the petitioner, on the
granting of certification, appealed to this court. *Affirmed.*

*J. Christopher Llinas*, for the appellant (petitioner).

*Linda F. Rubertone*, senior assistant state's attorney,
with whom, on the brief, were *Maureen Platt*, state's
attorney, and *Eva Lenczewski*, supervisory assistant
state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Rodney Chase, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, he claims that the court incorrectly determined that he received effective assistance of trial counsel. We disagree and, accordingly, affirm the judgment of the habeas court.

The following facts from the petitioner's underlying criminal conviction; see *State* v. *Chase*, 154 Conn. App. 337, 107 A.3d 460 (2014), cert. denied, 315 Conn. 925, 109 A.3d 922 (2015); and procedural history are relevant. Between November, 2011, and March, 2012, the petitioner was a houseguest in the home of M, his wife, R, their daughter, Z, who was born in 2004, and their three year old son.[1] Id., 340, 364. One evening after Christmas, 2011, the petitioner sexually assaulted Z. Id., 340. The petitioner moved out of Z's home in March, 2012, and, approximately three weeks later, Z disclosed the assault to her parents. Id. The petitioner was charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A), and risk of injury to a child in violation of General Statutes § 53-21 (a) (2).

During the petitioner's criminal trial, the state presented expert testimony from two forensic interviewers, Donna Meyer and Theresa Montelli. Meyer, who had conducted a forensic interview of Z, testified regarding the format and protocol used during forensic interviews. Montelli testified, generally, concerning the tendency of children to delay reporting incidents of abuse, and explained that "there is almost always a delay in disclosure" in child sexual assault cases for a variety of reasons. The petitioner's trial counsel, Attorney Howard Gemeiner, presented the expert testimony of Suzanne Sgroi, a medical doctor with a child sexual abuse consulting practice who had reviewed the records in the petitioner's criminal case. On direct examination, Sgroi explained that, in her opinion, Meyer's forensic interview of Z was "very brief" and that "there were a great many things that should have been asked that were not . . . ." She further testified that certain aspects of the format of the interview, such as a lack of instructions, including telling the child to be truthful and not to guess, "could have had an influence on what [Z] might say subsequently in any setting." She also testified that it is "very important" to obtain a complete narrative of how the complainant came forward to disclose the abuse in order to "elicit enough details" to "make it a more credible kind of narrative" that "can be checked and verified," but that there was "very little effort on the part of . . . Meyer to get any of that additional detail." Following a jury trial, the petitioner was sentenced to a total effective sentence

of ten years of incarceration and ten years of special parole for his conviction of sexual assault in the first degree in violation of § 53a-70 (a) (2) and risk of injury to a child in violation of § 53-21 (a) (2).[2]

In 2018, the petitioner filed the operative amended petition for a writ of habeas corpus in which he alleged, inter alia, ineffective assistance of trial counsel for Gemeiner's failure to familiarize himself with the issue of disclosure in child sexual assault cases, the failure to cross-examine certain state's witnesses adequately, and the failure to consult with or to present an expert witness on the validity of claims of child sexual abuse. In its return, the respondent, the Commissioner of Correction, denied the allegations of ineffectiveness. Following trial, the habeas court issued a memorandum of decision denying the petition for a writ of habeas corpus and concluding that the petitioner had not demonstrated that Gemeiner's performance was deficient. Having so concluded, the court did not reach the question of whether the petitioner was prejudiced by Gemeiner's performance. The petitioner filed a petition for certification to appeal, which the court granted. This appeal followed. Additional facts and procedural history will be set forth as necessary.

"[I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] . . . [i]t is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Because both prongs of *Strickland* must be demonstrated for the petitioner to prevail, failure to prove either prong is fatal to an ineffective assistance claim." (Citations omitted; internal quotation marks omitted.) *Llera* v. *Commissioner of Correction*, 156 Conn. App. 421, 426–27, 114 A.3d 178, cert. denied, 317 Conn. 907, 114 A.3d 1222 (2015).

"[J]udicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [peti-

tioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . In reconstructing the circumstances, a reviewing court is required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . ." (Internal quotation marks omitted.) *Cancel* v. *Commissioner of Correction*, 189 Conn. App. 667, 693, 208 A.3d 1256, cert. denied, 332 Conn. 908, 209 A.3d 644 (2019). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 680, 51 A.3d 948 (2012). "[T]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, 332 Conn. 615, 637, 212 A.3d 678 (2019).

The crux of the petitioner's argument on appeal is that Gemeiner failed in a number of ways to undermine Z's version of events by relying on the undisputed fact that Z did not disclose the alleged sexual abuse until approximately three weeks after it allegedly occurred. The petitioner concludes that, had Gemeiner put more emphasis on this delay, the jury would have concluded that the delay in disclosure was an indication that the incident never occurred. As we consider the petitioner's arguments, we recognize that our courts have permitted expert testimony to be admitted in sexual assault cases to explain why delayed disclosure does not necessarily and inexorably lead to the conclusion that a sexual assault did not occur. "Because it is only natural for a jury to discount the credibility of a victim who did not immediately report alleged incidents . . . testimony that explains to the jury why a minor victim of sexual abuse might delay in reporting the incidents of abuse should be allowed as part of the state's case-in-chief." (Internal quotation marks omitted.) *State* v. *Francis D.*, 75 Conn. App. 1, 16, 815 A.2d 191, cert. denied, 263 Conn. 909, 819 A.2d 842 (2003).

The petitioner argues that the court erred in finding that Gemeiner's performance was based on sound trial strategy because there was no evidence in the record to demonstrate that he had a legitimate strategic reason for (1) failing to familiarize himself with the issue of delayed disclosure, (2) failing to consult with or to present an expert witness on the issue of delayed disclosure, or (3) failing to cross-examine the state's expert witness, Montelli, adequately on the issue of delayed disclosure and that his cross-examination of her was "unfocused, disorganized, and rambling . . . ." He contends that Gemeiner testified at the habeas trial that he did not believe that the issue of delayed disclosure

mattered in the petitioner's case, despite the fact that the state considered the issue to be so central that it presented expert testimony from Montelli on the subject of delayed disclosure of sexual abuse by children and, particularly, the fact that delayed disclosure was not necessarily evidence of untruthful disclosure. We are not persuaded.

We begin by setting forth our standard of review. "It is well settled that in reviewing the denial of a habeas petition alleging the ineffective assistance of counsel, [t]his court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constitutes a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Brewer* v. *Commissioner of Correction*, 189 Conn. App. 556, 562, 208 A.3d 314, cert. denied, 332 Conn. 903, 208 A.3d 659 (2019).

In the present case, the court rejected the petitioner's argument that Gemeiner failed to familiarize himself with the issue of delayed disclosure. It found that the petitioner failed to present credible evidence to demonstrate that Gemeiner had failed to achieve a reasonable degree of familiarity with materials relevant to child forensic interview protocol, disclosure literature, and validation criteria in preparation for the petitioner's criminal trial. The court noted that Gemeiner testified that he had significant experience with child sexual assault cases and that he "tried to read all materials on testing the veracity of children—beyond newspapers and magazines." (Internal quotation marks omitted.) Gemeiner also testified that he was "fairly consumed" with researching the issue of testing the veracity of children in sexual assault cases and that he had consulted with and retained Sgroi. He also explained that he "didn't see anything in the time frame that was problematic" and that it did not matter whether the delay in disclosure was one day or four months. In his opinion, the problem was not the timing of the disclosure but rather that "there was no way to prove that [the petitioner] didn't have access to the child," because he was living in the home and had access to Z during the time of the alleged abuse. Even the testimony of the petitioner's expert at the habeas trial, Nancy Eiswirth, a clinical psychologist who had reviewed the trial testimony of Montelli and who had watched the video recording of Montelli's forensic interview of Z, highlighted concerns with a delayed disclosure defense. She testified that there is no association between a child's delayed disclosure of sexual abuse and her veracity and further stated that, because there is no definition of delayed disclosure, research on the topic is "questionable" and has "looked at everything from one day to years and years and years later." The court reasonably concluded that the petitioner had not overcome the presumption that

Gemeiner's had familiarized himself with topics germane to child sexual assault cases.

Regarding the petitioner's argument that Gemeiner failed to consult with or to present an expert witness on the issue of delayed disclosure, the court found that Gemeiner credibly testified that he had retained Sgroi to help develop a theory of defense and concluded that he presented the testimony of Sgroi at the criminal trial to rebut the testimony and opinions provided by the state's expert witnesses. Gemeiner testified at the habeas trial that he thought it was "imperative" to have an expert in the petitioner's case, and that he met with and delivered the case materials to Sgroi to review prior to trial. As noted by the habeas court, Gemeiner's typical practice when speaking with experts in criminal cases was to review all items in detail so as not to assume anything about the potential evidence. We cannot second-guess on appeal the court's credibility determinations regarding Gemeiner's testimony that he had retained Sgroi to assist with the defense. "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . Appellate courts do not second-guess the trier of fact with respect to credibility. . . . It is simply not the role of this court on appeal to second-guess credibility determinations made by the habeas court." (Internal quotation marks omitted.) *Budziszewski* v. *Connecticut Judicial Branch*, 199 Conn. App. 518, 530, 237 A.3d 792, cert. denied, 335 Conn. 965, 240 A.3d 283 (2020).

Beyond crediting as true Gemeiner's testimony concerning his preparation for the trial, the court found that Gemeiner made a sound strategic decision at trial not to question Sgroi regarding delayed disclosure but rather to address the topic through cross-examination of the state's expert witness, Montelli. On cross-examination, Gemeiner questioned Montelli regarding whether there was a link between delayed disclosure and a child's veracity. Montelli testified: "I don't think one has to do with the other," but that she could not speak to the issue of credibility and that "[i]t's really up to the child's statement and hearing from the child the reasons why they delay." As the court aptly stated, the transcripts of the underlying criminal trial make clear that Gemeiner used Sgroi's testimony to rebut the testimony of the state's expert witnesses, namely, to opine on the faults in Meyer's technique in conducting the forensic interview of Z. The petitioner has not overcome the presumption that Gemeiner's decision regarding what topics to develop during the examination of Sgroi and which topics to reserve for cross-examination of the state's expert witnesses was based on sound trial strategy. "Once an attorney makes an informed, strategic decision regarding how to cross-examine a witness, that decision is virtually unchallengeable." (Internal quotation marks omitted.) *Taft* v. *Commissioner of*

*Correction*, 159 Conn. App. 537, 557, 124 A.3d 1, cert. denied, 320 Conn. 910, 128 A.3d 954 (2015). "An attorney's line of questioning on examination of a witness clearly is tactical in nature. [As such, this] court will not, in hindsight, second-guess counsel's trial strategy. . . . The fact that counsel arguably could have inquired more deeply into certain areas, or failed to inquire at all into areas of claimed importance, falls short of establishing deficient performance." (Internal quotation marks omitted.) *Ruiz* v. *Commissioner of Correction*, 195 Conn. App. 847, 861, 227 A.3d 1049, cert. denied, 335 Conn. 915, 229 A.3d 729 (2020). Accordingly, after reviewing the record of both the trial and habeas proceedings, we conclude that the petitioner has failed to overcome the presumption that trial counsel's examination of Sgroi and cross-examination of Montelli represented a sound trial strategy.

Having carefully reviewed the issues raised by the petitioner, we conclude that the habeas court did not err when it concluded that the petitioner failed to prove that Gemeiner performed deficiently.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity might be ascertained. See General Statutes § 54-86e.

[2] The petitioner was also found guilty of two counts of sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A), but the court vacated the jury's verdicts on those two counts due to an error in the jury instructions.