******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MICHAEL G. *v.* COMMISSIONER OF CORRECTION*
## (AC 43327)

Alvord, Cradle and Eveleigh, Js.

*Syllabus*

Pursuant to statute (§ 52-470 (d) (1)), when a habeas petitioner files a subsequent petition for a writ of habeas corpus more than two years after the date on which judgment on a prior habeas petition challenging the same conviction is deemed final, there is a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause.

The petitioner, who had been convicted of the crimes of sexual assault in the first degree and risk of injury to a child, filed a third petition for a writ of habeas corpus. Because the third petition was filed beyond the two year time limit for subsequent petitions set forth in § 52-470 (d) (1), the habeas court, upon the request of the respondent Commissioner of Correction, issued an order to show cause why the petition should be permitted to proceed and scheduled an evidentiary hearing on the issue. Prior to the show cause hearing, the petitioner moved to disqualify the habeas judge on the ground that he had presided over the petitioner's first habeas trial and that his comments related to the credibility of the petitioner's testimony in that case would create the appearance of impropriety if he were to preside over the present case. The habeas court denied the petitioner's motion for disqualification. At the show cause hearing, the petitioner testified that he had filed a timely second habeas petition, but it was withdrawn prior to trial on the advice of his counsel and that his counsel had advised him to wait at least sixty days before filing another petition to avoid the suspicion of the court. The habeas court dismissed the third habeas petition as untimely, concluding that the petitioner failed to demonstrate good cause for the nearly ten month delay in filing the petition and that the withdrawal of the second petition was strategically filed to manipulate or delay proceeding to trial. Thereafter, the habeas court denied the petitioner's petition for certification to appeal, and the petitioner appealed to this court. *Held*:

1. The habeas court did not abuse its discretion in denying the petition for certification to appeal, the petitioner having failed to demonstrate that his claims involved issues that were debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions raised were adequate to deserve encouragement to proceed further.

2. The habeas court did not abuse its discretion in determining that the petitioner failed to demonstrate good cause for the delay in filing his third habeas petition: contrary to the petitioner's claim that he established good cause because the delay was due to his second habeas counsel's incorrect advice, the petitioner failed to establish that something outside of his or his counsel's control caused or contributed to the delay in filing the third petition, and, even assuming that it was reasonable for him to withdraw the second petition prior to his pending trial and to wait at least sixty days before filing another petition, the petitioner did not file his third petition until nearly ten months after the statutory deadline had elapsed, and he provided no explanation as to why he waited an additional eight months beyond his counsel's suggested sixty day period before filing it; moreover, in making its determination, the habeas court reasonably considered the fact that the petitioner made no claim that the delay was due to missing witnesses or newly discovered evidence and reasonably concluded that the petitioner's actions were an attempt to manipulate or delay proceeding to trial.

3. The habeas court did not abuse its discretion in denying the petitioner's motion for disqualification of the habeas judge: contrary to the petitioner's contention that certain comments made by the judge during the petitioner's first habeas trial created the appearance of impropriety, the judge indicated that he had no recollection of the prior proceeding, which had occurred seven years earlier, and the subject comments were made in the purview of his judicial role and reflected credibility

determinations made with respect to the specific testimony given and the demeanor exhibited at the first habeas trial, and, therefore, it was clear that the judge's previous credibility determinations would not cause a reasonable person to question his impartiality in presiding over the present case nor were his comments so extreme as to display a clear inability to render fair judgment.

Argued March 10, 2021—officially released August 9, 2022

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Newson, J.*, rendered judgment dismissing the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Jennifer B. Smith*, assistant public defender, for the appellant (petitioner).

*Jonathan M. Sousa*, deputy assistant state's attorney, with whom, on the brief, were *Dawn Gallo*, state's attorney, *Leah Hawley*, senior assistant state's attorney, and *Amy L. Bepko-Mazzocchi*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Michael G., appeals following the denial of his petition for certification to appeal from the judgment of the habeas court dismissing his petition for a writ of habeas corpus pursuant to General Statutes § 52-470 (d) and (e).[1] On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification to appeal because (1) the habeas court erred in determining that the petitioner failed to demonstrate good cause to overcome the statutory presumption of unreasonable delay and (2) the habeas judge improperly failed to disqualify himself. We disagree and, therefore, dismiss the appeal.

The following facts and procedural history are relevant to our resolution of this appeal. "On December 20, 2005, [a] jury returned a guilty verdict on four counts of sexual assault in the first degree and four counts of risk of injury to a child. On March 10, 2006, the [petitioner] was sentenced to a total effective term of eighty years imprisonment, execution suspended after forty years, followed by six years of special parole and twenty years probation." *State* v. *Michael G.*, 107 Conn. App. 562, 566, 945 A.2d 1062, cert. denied, 287 Conn. 924, 951 A.2d 574 (2008). This court affirmed the judgment of conviction on direct appeal. Id., 563. Our Supreme Court denied certification to appeal this court's decision.

Thereafter, on January 21, 2010, the petitioner filed his first petition for a writ of habeas corpus, which he amended on March 16, 2012 (first petition), alleging that his trial counsel had rendered deficient performance. Following a trial on the merits, the habeas court denied that first petition. *Michael G.* v. *Commissioner of Correction*, 153 Conn. App. 556, 558, 102 A.3d 132 (2014), cert. denied, 315 Conn. 916, 107 A.3d 412 (2015). The habeas court denied his petition for certification to appeal, and this court dismissed his appeal on October 21, 2014. Id., 563. Our Supreme Court denied the petitioner certification to appeal on January 21, 2015.

The petitioner filed a second petition for a writ of habeas corpus on September 23, 2014 (second petition). A habeas trial with respect to that second petition was scheduled to begin on May 9, 2017. The petitioner, however, withdrew that petition on February 7, 2017.

The petitioner filed a third petition for writ of habeas corpus, the subject of this appeal, on December 1, 2017 (third petition). The respondent, the Commissioner of Correction, thereafter filed a request with the habeas court, pursuant to § 52-470 (d) and (e), for an order to show cause as to "why [the petitioner] should be permitted to proceed despite his delay in filing the instant habeas corpus petition." Subsequently, the habeas court, *Newson, J.*, ordered an evidentiary hearing (show cause hearing).

On February 20, 2019, prior to the show cause hearing, the petitioner moved that the habeas judge disqualify himself, arguing that, because Judge Newson had presided over the habeas trial on the petitioner's first petition, he should disqualify himself from presiding over this case. On March 15, 2019, at the start of the show cause hearing, the court addressed the motion for disqualification and concluded that disqualification was not necessary. The court then proceeded to conduct the show cause hearing on March 15, 2019. The only evidence presented at the hearing was the testimony of the petitioner. The court also heard legal arguments from both sides.

Thereafter, on June 21, 2019, the court issued a memorandum of decision dismissing the petitioner's third petition. In its decision, the court concluded that the petitioner's third petition was untimely by approximately ten months[2] and, further, that the petitioner did not demonstrate good cause for the delay in filing the petition. Thereafter, the petitioner filed a petition for certification to appeal, which the court denied. This appeal followed.

Following oral argument before this court held on March 10, 2021, at the petitioner's request, this appeal was stayed pending our Supreme Court's consideration of *Kelsey* v. *Commissioner of Correction*, 343 Conn. 424, 274 A.3d 85 (2022).

Following our Supreme Court's decision in *Kelsey*, the parties were ordered to file supplemental briefs addressing *Kelsey*'s impact on this appeal. Additional procedural history will be set forth as necessary.

We begin by setting forth the legal principles that govern our review of a habeas court's denial of a petition for certification to appeal. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the [denial] of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . To prove that the denial of his petition for certification to appeal constituted an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . In determining whether the habeas court abused its discretion in denying the

petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Internal quotation marks omitted.) *Olorunfunmi* v. *Commissioner of Correction*, 211 Conn. App. 291, 303, 272 A.3d 716, cert. denied, 343 Conn. 929,     A.3d     (2022).

## I

The petitioner's first claim is that he established good cause for his delay in filing his third petition because the delay was due to incorrect advice from his counsel in his second habeas case.[3] We disagree.

The petitioner was the only witness who testified at the show cause hearing, and no other evidence was offered by the parties. With respect to his second petition, the petitioner testified that it was filed before our Supreme Court denied his petition for certification to appeal this court's decision in his first habeas case. He testified that he was represented by counsel in the second habeas case, his counsel advised him to withdraw the second petition, and, "as far as [he knew], it was" withdrawn. In addition, when asked during direct examination, he agreed that his counsel further had advised him that he should wait "at least sixty days" after withdrawing the second petition before filing another "in order to avoid suspicion of the court."

Following the petitioner's testimony, each side presented argument. The respondent's counsel maintained that "[t]he [petitioner's] attorney was not here to testify as to what he did and didn't tell [the petitioner]. The only thing we have is the self-serving testimony that, you know, he, he was given this advice. I mean, clearly, the petition is late. It was filed after the statutory time period and there has been . . . no testimony as to newly discovered evidence, and nothing that shows good cause for the time delay. So, the petitioner's failed to meet his burden of proof." The petitioner's counsel discussed the issue of what exact date established when a petition was timely or not, asserting that the petitioner had until February 10, 2017, three days after he withdrew his second petition, to file another subsequent petition. In closing, the petitioner's counsel noted: "I think that the issue is . . . that he was given the incorrect advice during the time frame in which he could have filed another one timely."

Thereafter, on June 21, 2019, the habeas court dismissed the petitioner's third petition, determining that he lacked good cause for the delay in the filing of the

petition. In its memorandum of decision, the habeas court first determined that "the petitioner had two years from when the Supreme Court issued notification [that] it had denied certification to file a subsequent habeas action attacking the same conviction, which would have given him until January 21, 2017, but the present action was not filed until December 1, 2017." The habeas court then concluded that the petitioner did not meet his evidentiary burden of demonstrating good cause for the delay because "[t]here is no claim that the petitioner was 'forced' or 'misled' into withdrawing this prior petition. There is also no claim that the petitioner was lacking necessary information or witnesses when he filed the withdrawal, or that he has discovered otherwise unknown evidence between then and now. Instead, the court is left with the only reasonable conclusion that the withdrawal of the prior action was strategically filed simply to manipulate or delay proceeding to trial."

We begin by setting forth the applicable standard of review. "[A] habeas court's determination regarding good cause under § 52-470 (e) is reviewed on appeal only for abuse of discretion. Thus, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling[s] . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did."[4] (Internal quotation marks omitted.) *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 440.

Section 52-470 (d) provides in relevant part: "In the case of a petition filed subsequent to a judgment on a prior petition challenging the same conviction, there shall be a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause if such petition is filed after . . . [t]wo years after the date on which the judgment in the prior petition is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review . . . ." Section 52-470 (e) provides in relevant part that, "[i]f . . . the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss the petition."

"[T]o rebut successfully the presumption of unreasonable delay in § 52-470, a petitioner generally will be required to demonstrate that something outside of the control of the petitioner or habeas counsel caused or contributed to the delay." (Internal quotation marks omitted.) *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 441–42. The following nonexhaustive list of factors aid in determining whether a petitioner has satisfied the definition of good cause: "(1) whether external forces outside the control of the petitioner had any bearing on the delay; (2) whether and to what extent the petitioner or his counsel bears any personal respon-

sibility for any excuse proffered for the untimely filing; (3) whether the reasons proffered by the petitioner in support of a finding of good cause are credible and are supported by evidence in the record; and (4) how long after the expiration of the filing deadline did the petitioner file the petition."[5] (Internal quotation marks omitted.) Id., 442.

"[A]lthough . . . the legislature certainly contemplated a petitioner's lack of knowledge of a change in the law as potentially sufficient to establish good cause for an untimely filing, the legislature did not intend for a petitioner's lack of knowledge of the law, standing alone, to establish that a petitioner has met his evidentiary burden of establishing good cause. As with any excuse for a delay in filing, the ultimate determination is subject to the same factors previously discussed, relevant to the petitioner's lack of knowledge: whether external forces outside the control of the petitioner had any bearing on his lack of knowledge, and whether and to what extent the petitioner or his counsel bears any personal responsibility for that lack of knowledge."[6] (Footnote omitted.) Id., 444–45.

In *Kelsey*, the petitioner filed a second petition for a writ of habeas corpus approximately five years after our Supreme Court denied his petition for certification to appeal from this court's judgment affirming the habeas court's denial of his first petition for a writ of habeas corpus. Id., 429. The habeas court determined that the petitioner did not demonstrate good cause for the delay in filing his second petition and, therefore, dismissed the petition. Id., 431. Before our Supreme Court, the petitioner argued that, "in addition to his prior habeas counsel's failure to inform him of any statutory filing deadlines, his status as a self-represented party when he filed this petition caused the delay in filing insofar as his conditions of confinement had caused him to be unaware of the deadline set by the 2012 amendments to § 52-470." Id., 441. The court rejected this argument, noting that the "petitioner had access to a resource center that included the General Statutes" and that "the petitioner stated [as explanation for the delay] that he was housed in and out of administrative segregation due to a disciplinary problem." Id., 446.

In the present case, the petitioner argues that he established good cause because "his second habeas counsel failed to explain the statutory time limits in . . . § 52-470 and incorrectly advised him to withdraw his prior petition and refile it outside of the two year statutory deadline."[7] Specifically, he argues that his "second habeas counsel's deficient advice caused the delay in filing the instant petition. At the time the petitioner withdrew his prior petition, counsel failed to inform him of the statutory deadline that could preclude him from pursuing [an additional] habeas corpus [peti-

tion].” The petitioner further states that his habeas counsel was “required to understand the time constraints governing habeas corpus . . . .” The respondent replies that the petitioner's arguments “cannot be reconciled with the *Kelsey* court's statement that good cause must be something outside the control of both the petitioner and habeas counsel” because “*both* the petitioner and [his habeas counsel] bear personal responsibility for the consequences of the withdrawal of the prior petition.” (Emphasis in original.) We agree with the respondent.

As the respondent notes, the record does not establish that the petitioner or his counsel was unaware of § 52-470 and the time limits included therein.[8] Even if we were to assume without determining, however, that neither the petitioner nor his habeas counsel was aware of the time limits,[9] the petitioner still cannot demonstrate that the habeas court abused its discretion in determining that the erroneous advice the petitioner received did not establish good cause for the delay in filing the third petition. The first two *Kelsey* factors are particularly instructive: On the basis of the evidence presented at the show cause hearing, there are no external factors at play and the petitioner and his habeas counsel together exclusively bear responsibility for the delay in filing the petition.[10] See *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 445 (“whether and to what extent the petitioner or his counsel bears any responsibility for that lack of knowledge” is relevant to good cause inquiry); see also *Schoolhouse Corp.* v. *Wood*, 43 Conn. App. 586, 591–92, 684 A.2d 1191 (1996) (neglect by party or party's attorney does not meet traditional definition of good cause), cert. denied, 240 Conn. 913, 691, A.2d 1079 (1997). It has not been established that “something outside of the control of the petitioner or habeas counsel caused or contributed to the delay.” *Kelsey* v. *Commissioner of Correction*, supra, 442.

In addition, the length of the delay further supports the habeas court's determination that the petitioner failed to demonstrate good cause for the delay. Even assuming, without determining, that it was reasonable for the petitioner to withdraw the second petition prior to his pending trial and to wait “at least [sixty] days” before filing another petition, he did not file his third petition until almost ten months had elapsed, and, further, he provides no explanation as to why he waited an additional eight months after his habeas counsel's suggested sixty day waiting period.[11]

Finally, the habeas court reasonably considered the fact that the petitioner made no claim that the delay was due to missing witnesses or newly discovered evidence and reasonably concluded that the petitioner's actions were an attempt to “manipulate or delay proceeding to trial.”[12] Thus, we conclude that the habeas

court did not abuse its discretion in determining that the petitioner had failed to demonstrate good cause for the delay in filing his third petition for a writ of habeas corpus.

## II

The petitioner's second claim is that the court "improperly failed to recuse itself from deciding the respondent's good cause motion." We disagree.

The following additional procedural history is relevant to our resolution of this claim. Subsequent to the trial on the petitioner's first petition for a writ of habeas corpus, during which the petitioner testified as a witness, Judge Newson issued an oral decision denying the petition. In that ruling, Judge Newson made the following comments: "[F]rankly, to put it bluntly, the petitioner's testimony lacked even the slightest semblance of credibility as to anything that came out of his mouth. . . . [H]e lacked even the slightest semblance of credibility. I watched his demeanor and his action, and I'm not just talking about his words. I don't think [the petitioner] even believed himself . . . and that's the court's assessment of him and his demeanor while he was testifying here.

"So that it's clear for the record, I am not judging the words; I am judging the person I saw on the stand and whether or not I found him the least bit credible as to those allegations . . . ." In addition, Judge Newson commented that the petitioner's parents, who also testified at the habeas trial, similarly lacked credibility.

In the present case, prior to the show cause hearing, the petitioner filed a motion pursuant to Practice Book §§ 1-22[13] and 1-23[14] and rule 2.11 of the Code of Judicial Conduct to disqualify Judge Newson "from hearing any aspect of this case." The petitioner argued that, because Judge Newson had "remarked on multiple occasions" that the petitioner lacked credibility and because "[t]he petitioner's credibility, in the present case, will be critical to the outcome . . . [i]n order to maintain the fairness of these proceedings and ensure that the petitioner receives due process, the court must not place itself in the precarious position of opining on the credibility of the petitioner [whom] it once found 'lacked any semblance of credibility.' " In the motion, the petitioner conceded that "there is no Practice Book rule or statute that explicitly prohibits the court from presiding over the petitioner's case" and that there is "no evidence that the court is actually biased against him." (Emphasis omitted.) Instead, his position was that "presiding over the present case would, at the very least, present an appearance of impropriety that this court could easily avoid by assigning the matter to another judge for all future proceedings . . . ."

At the start of the show cause hearing, Judge Newson addressed the motion for disqualification. The peti-

tioner argued that Judge Newson's previous credibility determinations created the "appearance of impropriety," warranting disqualification. The respondent's attorney stated, "[w]e take no position."

Judge Newson then made the following oral ruling: "All right. I can, I can say this, I, I did read the, I did read the transcript. I can tell you in reading the transcript, I don't necessarily have any direct memory of the case or the proceedings. I will honestly say, notwithstanding the court's rather strong language, I think that language, as it was expressed in the opinion, was related to whatever the stories or the stories or testimony, for lack of a better word, that was related to the court in that matter.

"I don't know that I think I found, generally, that as a person [the petitioner] was not credible, but—and I think there's even mention of comments about, I think his parents testified—that watching their demeanor and other things that were in front of me at that time, I found that they lacked credibility. I also would note that, notwithstanding the strong language under those circumstances, that's a court's job in matters like this, which is to find whether or not persons are or not credible. And, I would imagine that if the fact that a court used strong language related to a matter as opposed to generally, were grounds for disqualification, there would be many.

"So I will, again, deny the request. Again, this is a substantially different matter, some seven years in the future. And, again, I can tell you—and I know, I know counsel's doing her job. At, at this point, I don't honestly have a direct memory of what even the facts and circumstances of that matter were. Although, I can tell you, it's not the—well, I'll just leave it at that."

On appeal, the petitioner asserts that "[a] reasonable person would have believed that the habeas court had a preconceived view that the petitioner was not credible at the time he presided over the petitioner's show cause hearing, based on his repeated findings in the petitioner's prior habeas action that the petitioner 'lacked even the slightest semblance of credibility as to anything that came out of his mouth.' "[15] In reply, the respondent asserts that "the habeas court properly exercised its discretion in denying the motion for recusal because its comments on the petitioner's credibility were limited to the evidence presented during the first habeas trial, of which the habeas court had no direct recollection and which occurred seven years before the [show] cause hearing. Moreover, the comments would not have impacted the outcome of the instant proceeding, which did not depend on the court's assessment of the petitioner's credibility." We agree with the respondent.

"Appellate review of the trial court's denial of a defendant's motion for judicial disqualification is subject to

the abuse of discretion standard. . . . That standard requires us to indulge every reasonable presumption in favor of the correctness of the court's determination." (Internal quotation marks omitted.) *State* v. *Lane*, 206 Conn. App. 1, 8, 258 A.3d 1283, cert. denied, 338 Conn. 913, 259 A.3d 654 (2021); see also *Joyner* v. *Commissioner of Correction*, 55 Conn. App. 602, 609, 740 A.2d 424 (1999).

We begin our analysis with Practice Book § 1-22 (a), which provides in relevant part that "[a] judicial authority shall . . . be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Rule 2.11 of the Code of Judicial Conduct . . . ." Rule 2.11 (a) of the Code of Judicial Conduct provides in relevant part: "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned . . . ."[16]

"In applying this rule, [t]he reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. . . . Moreover, it is well established that [e]ven in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority. . . . Nevertheless, because the law presumes that duly elected or appointed judges, consistent with their oaths of office, will perform their duties impartially . . . the burden rests with the party urging disqualification to show that it is warranted." *State* v. *Milner*, 325 Conn. 1, 12, 155 A.3d 730 (2017).

"[O]pinions that judges may form as a result of what they learn in earlier proceedings in the same case rarely constitute the type of bias, or appearance of bias, that requires recusal. . . . To do so, an opinion must be so extreme as to display clear inability to render fair judgment. . . . In the absence of unusual circumstances, therefore, equating knowledge or opinions acquired during the course of an adjudication with an appearance of impropriety or bias requiring recusal finds no support in law, ethics or sound policy." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Rizzo*, 303 Conn. 71, 121, 31 A.3d 1094 (2011), cert. denied, 568 U.S. 836, 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012); see *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 529, 911 A.2d 712 (2006) (plain error for judge, who had represented petitioner during criminal proceedings, to not recuse himself given that habeas petition over which he presided had initially alleged that "his own prior representation of the petitioner was so deficient that it deprived the petitioner

of counsel in violation of the sixth amendment to the federal constitution" as reasonable person would question judge's impartiality).

As noted, the petitioner argues that Judge Newson's previous comments regarding the petitioner's testimony during his first habeas trial created the appearance of impropriety. After considering the record, we cannot conclude that Judge Newson abused his discretion in denying the petitioner's motion for disqualification. As Judge Newson noted in his oral ruling, the allegedly offending comments properly were made in the purview of his judicial role as it is squarely within a habeas judge's authority to make credibility determinations concerning witness testimony. See, e.g., *Chase* v. *Commissioner of Correction*, 210 Conn. App. 492, 500, 270 A.3d 199 ("[t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony" (internal quotation marks omitted)), cert. denied, 343 Conn. 903, 272 A.3d 199 (2022). Judge Newson's comments reflect credibility determinations made with respect to the specific testimony given and the demeanor exhibited at the habeas trial, further demonstrating that the judge acted in accordance with his role rather than making an unbounded determination that the petitioner is incapable of giving credible testimony. Furthermore, Judge Newson stated that he had no recollection of the prior proceeding, which occurred seven years earlier. See *State* v. *Webb*, 238 Conn. 389, 461, 680 A.2d 147 (1996) ("[t]he greater the length of time that has passed since the prior appearance, the less likely it is that the judge possesses any bias against the party"). Given these circumstances, it is clear that Judge Newson's previous credibility determinations would not cause a reasonable person to question the impartiality of the arbiter of the current proceeding nor were his comments "so extreme as to display a clear inability to render fair judgment." (Internal quotation marks omitted.) *State* v. *Rizzo*, supra, 303 Conn. 121. As the respondent aptly suggested: "An objective observer, upon reviewing the transcript from the habeas court's decision in 2012, would not reasonably doubt the court's ability to assess the petitioner's credibility anew in an unrelated proceeding held seven years later."

Accordingly, we conclude that the petitioner has failed to demonstrate that his claims involve issues that are debatable among jurists of reason, a court could resolve the issues in a different manner, or the questions are adequate to deserve encouragement to proceed further. Thus, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the

victims of sexual abuse and the crime of risk of injury to a child, we decline use the petitioner's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] General Statutes § 52-470 provides in relevant part: "(d) In the case of a petition filed subsequent to a judgment on a prior petition challenging the same conviction, there shall be a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause if such petition is filed after the later of the following: (1) Two years after the date on which the judgment in the prior petition is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review . . . . For the purposes of this section, the withdrawal of a prior petition challenging the same conviction shall not constitute a judgment. The time periods set forth in this subsection shall not be tolled during the pendency of any other petition challenging the same conviction. . . .

"(e) In a case in which the rebuttable presumption of delay under subsection . . . (d) of this section applies, the court, upon the request of the respondent, shall issue an order to show cause why the petition should be permitted to proceed. The petitioner or, if applicable, the petitioner's counsel, shall have a meaningful opportunity to investigate the basis for the delay and respond to the order. If, after such opportunity, the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss the petition. For the purposes of this subsection, good cause includes, but is not limited to, the discovery of new evidence which materially affects the merits of the case and which could not have been discovered by the exercise of due diligence in time to meet the requirements of subsection . . . (d) of this section."

[2] Specifically, the court determined that the statutory deadline applicable to the filing of subsequent habeas petitions was January 21, 2017. On appeal, the petitioner argues that this was a clearly erroneous factual finding because he had two years and twenty days from the day our Supreme Court denied the petitioner's petition for certification to appeal to file another petition, rendering the operative deadline February 10, 2017. As the respondent maintains, however, we need not consider this assertion because, regardless of which date is used, the petitioner's third petition was late by several months, a fact the petitioner concedes. See footnote 3 of this opinion. Furthermore, in his supplemental brief to this court, the petitioner notes that "[t]he statutory deadline expired on January 21, 2017," therefore seeming to abandon this claim.

[3] The petitioner does not dispute that his third petition was untimely.

[4] Initially, the petitioner argued that the habeas court's determination regarding good cause was subject to plenary review because "the question of whether the petitioner has established 'good cause' under . . . § 52-470 presents an issue of statutory interpretation . . . ." As discussed previously in this opinion, this appeal was stayed pending our Supreme Court's decision in *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 424. In *Kelsey*, our Supreme Court rejected the argument that a decision to dismiss a habeas petition for failure to establish good cause required statutory interpretation and clarified that the proper standard of review is abuse of discretion. Id., 432, 440. In his supplemental brief, the petitioner acknowledges that the applicable standard of review is abuse of discretion.

[5] In his initial appellate briefing, the petitioner argued for "an expansive definition" of what constitutes good cause. In his supplemental briefing, however, the petitioner does not challenge the definition of good cause or the relevant factors for consideration set forth in *Kelsey*, which Supreme Court decision is binding on this court. See *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010) ("it is manifest to our hierarchical judicial system that [the Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court . . . [is] bound by [its] precedent").

[6] In addition to these factors, but not relevant to our review of the petitioner's claim, our Supreme Court established that "the habeas court may also include in its good cause analysis whether a petition is wholly frivolous on its face. . . . [T]he good cause determination can be, in part, guided by the merits of the petition." *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 444 n.9.

[7] In his principal brief to this court, the petitioner also argues that the delay was due to his then pending sentence review application, as he was waiting to see if his sentence would be modified before filing a third habeas petition. The respondent argues that "this claim is unreviewable because the habeas court did not issue a ruling on it, and the petitioner never sought articulation of the record on either the claim itself or the respondent's

written objection thereto.''

On March 18, 2019, following the show cause hearing, the petitioner filed a "supplemental brief in support of good cause" in which he argued that the habeas court could "infer that the petitioner waited to file a new petition for a writ of habeas corpus . . . because of his pending sentence review application." The petitioner attached the sentence review decision, which was issued on January 23, 2018, to the brief. The respondent objected to the brief and the arguments therein and requested that the brief be stricken. The court did not rule on the objection and did not address the sentence review argument in its memorandum of decision. Given that the petitioner did not raise the argument during the show cause hearing and the court did not address it in its memorandum of decision, we agree with the respondent that the issue is not reviewable.

[8] The respondent also asserts that we should apply the principle that "everyone is presumed to know the law"; (internal quotation marks omitted) *State* v. *Legrand*, 129 Conn. App. 239, 271, 20 A.3d 52, cert. denied, 302 Conn. 912, 27 A.3d 371 (2011). Because lack of knowledge alone does not establish good cause, we need not consider whether the presumption applies in this case. See *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 444.

[9] The evidence at the show cause hearing established only that the petitioner was advised to withdraw his second petition and file a third petition after the expiration of at least sixty days. There was no evidence as to the petitioner's knowledge, or lack thereof, of the time limitations contained in § 52-470 and, similarly, no evidence regarding his habeas counsel's knowledge of § 52-470.

[10] The petitioner argues that his habeas counsel provided ineffective assistance and that such defective assistance, being the result of the delay, established good cause for the delay in filing. The petitioner has failed, however, to provide any binding or persuasive law to support this position.

[11] The petitioner initially argued that "[i]t is irrelevant when the petitioner filed the instant habeas petition because, even as the habeas court acknowledged, the petitioner 'would have been beyond the two year window . . . .'" In *Kelsey*, however, our Supreme Court affirmed that the length of time between the filing deadline and the filing of the petition is relevant to the good cause inquiry. *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 438.

[12] The petitioner does not claim that this conclusion was unfounded but, rather, asserts that "why the petitioner sought to withdraw his prior petition is irrelevant."

[13] Practice Book § 1-22 (a) provides: "A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Rule 2.11 of the Code of Judicial Conduct or because the judicial authority previously tried the same matter and a new trial was granted therein or because the judgment was reversed on appeal. A judicial authority may not preside at the hearing of any motion attacking the validity or sufficiency of any warrant the judicial authority issued nor may the judicial authority sit in appellate review of a judgment or order originally rendered by such authority.''

[14] Practice Book § 1-23 provides: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time.''

[15] We note that many of the arguments set forth in the petitioner's appellate brief assert the existence of actual bias. Because the petitioner specifically disclaimed any argument that Judge Newson was actually biased during the hearing before the habeas court, however, any argument that Judge Newson was actually biased against the petitioner is waived. See *State* v. *Andres C.*, 208 Conn. App. 825, 853–54, 266 A.3d 888 (2021) ("[W]aiver is [t]he voluntary relinquishment or abandonment—express or implied—of a legal right or notice. . . . In determining waiver, the conduct of the parties is of great importance. . . . [W]aiver may be effected by action of counsel. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal." (Internal quotation marks omitted.)), cert. granted, 342 Conn. 901, 270 A.3d 97 (2022).

[16] The rule provides a nonexhaustive list of examples of situations warranting disqualification. See Code of Judicial Conduct, Rule 2.11 (a).